NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0045-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

THOMAS J. FOX,
a/k/a THOMAS J. FOX III
and THOMAS J. FOX JR.,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION
AS REDACTED**

**August 3, 2026**

**APPELLATE DIVISION**

Argued May 20, 2026 – Decided August 3, 2026

Before Judges Gummer, Paganelli, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 23-07-1607.

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Peter T. Blum, of counsel and on the briefs).

Linda A. Shashoua, Assistant Prosecutor, argued the cause for respondent (William Reynolds, Atlantic County Prosecutor, attorney; Linda A. Shashoua, of counsel and on the brief; Courtney Cittadini, Section Chief, on the brief).

The opinion of the court was delivered by

JACOBS, J.A.D.

This appeal presents a question of first impression: whether a trial judge may require a jury to reach unanimity before requesting playback of trial testimony. We conclude the trial judge misapplied her discretion by requiring juror unanimity before further considering an initial request for testimony playback. We therefore vacate defendant's convictions for fourth-degree operating a motor vehicle during a period of license suspension, vacate the sentence imposed, and remand for a new trial.

I.

On February 14, 2018, Officer David LaSassa of the Galloway Township Police Department conducted a traffic stop of defendant's pickup truck carrying furniture in its bed. A rope used to secure the furniture was trailing along the roadway approximately twenty yards behind the vehicle. Officer LaSassa asked for defendant's driver's license, but defendant informed the officer he did not have one. Before he could complete the stop, the officer was dispatched to another call. Later, Officer LaSassa confirmed with dispatch defendant's driver's license had been suspended. He issued three citations, which were mailed to defendant at the last known address associated with his license, charging: (1) improper loading of a vehicle so as to spill, N.J.S.A.

39:4-77; (2) driving without a license, N.J.S.A. 39:3-10; and (3) operating a motor vehicle while a license is suspended or revoked, N.J.S.A. 39:3-40.

On July 18, 2023, an Atlantic County grand jury indicted defendant for fourth-degree operating a motor vehicle during a period of license suspension, N.J.S.A. 2C:40-26(a), and fourth-degree operating a motor vehicle during a period of license suspension based on a second violation, N.J.S.A. 2C:40-26(b).  The fourth-degree charges were tried before a jury, and the traffic violations were tried before the trial judge.

At trial in April 2024, the State presented two witnesses, Officer LaSassa and Brian Beke, a Driver Improvement Analyst at the New Jersey Motor Vehicle Commission (MVC).  Defendant did not testify or call any witnesses.

Officer LaSassa testified regarding the motor-vehicle stop.  Beke testified about defendant's driver's abstract, which showed multiple prior suspensions and convictions for driving under the influence and driving while suspended.  A redacted version of the eight-page abstract was admitted into evidence without objection.  Beke explained that on May 14, 2009, defendant's driving privileges were suspended for two years because defendant had operated a vehicle while under the influence of liquor or drugs on March 29, 2009.  On September 3, 2010, defendant received two additional violations, for

3

operating a vehicle while under the influence of alcohol or drugs and for operating a vehicle with a suspended license. On February 2, 2011, the municipal court suspended defendant's license for a ten-year period, beginning on January 5, 2011, for the operating-while-under-the-influence violation. Beke explained the MVC receives confirmation of suspensions from the court and records them. Then "the system generates the notice and mails it out" to the driver's last known address.

After Beke testified, the judge instructed the jury not to speculate about redactions to defendant's driver's abstract and to consider only the evidence presented. In her final charge to the jury, the judge also gave a limiting instruction that the evidence regarding permissible use of prior motor-vehicle violations was admitted "for the specific purpose of establishing an element of the present offense."

As reflected in the trial transcript, the court recessed at 3:10 p.m. for jury deliberations. The court reconvened at 3:58 p.m. in response to a note from the jury requesting a transcript of the trial. Without first reading the note on the record or conferring with counsel as to an appropriate response, the judge had the jury returned to the courtroom. The judge responded to the jury's request:

> [THE COURT Reading the note:] "Can we have [c]ourt transcripts?" There isn't a [c]ourt transcript, so

4

what you are allowed to do, and what we may do for you, is we can replay portions of the testimony for you, okay? In order for me to do that, we don't replay the whole trial. So what I need is that <u>unanimously</u> that you all go back into the jury room, and you're going to send me out another note of what portions of the testimony you would like to have replayed, okay? So it would be best if you told me which witness and what portions.

And I need it to be something that's <u>unanimous</u>, that <u>you all agree</u> that that's the portions you need. And we can't replay . . . we don't . . . we would prefer not to replay a two-hour trial, or two-and-a-half[-]hour trial. So you know, when I say portions, you know, you can . . . limit it by subject matter or time or whatever, whatever you have that can tell me so I can identify in the [c]ourt's record what it is that you're looking for, okay?

So you're going to go back into the jury room. Send me out another note through the jury officer, and then we will determine where we go from here, okay?

Counsel, anything for the record?

[PROSECUTOR]: Nothing from the [S]tate.

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: Thank you.

(Jury exits the courtroom)

[(Emphasis added).]

The jury resumed deliberations at 4:02 p.m. without issuing a note responsive to the judge's instruction. Instead, at 4:47 p.m., the jury

communicated it had reached a verdict, convicting defendant of both fourth-degree charges. The judge found defendant guilty of the traffic violations. Defendant moved for a judgment of acquittal, arguing insufficient evidence was adduced to prove he had known his license was suspended. The judge denied the motion, finding the State's evidence sufficient. At sentencing, the judge imposed an aggregate fifteen-month term of imprisonment with a 180-day parole disqualifier, and additional fines and penalties on the traffic violations.

Defendant appeals, raising four arguments:

POINT I

THE DRIVING-WHILE-SUSPENDED CONVIC-TIONS SHOULD BE DISMISSED BECAUSE DOCUMENTS SHOWING ONLY THAT A PRIOR COURT HAD SUSPENDED DEFENDANT'S LICENSE AND THAT A CONFIRMATION HAD BEEN MAILED TO A REDACTED ADDRESS DID NOT SUFFICIENTLY PROVE THAT DEFENDANT KNEW HIS LICENSE WAS SUSPENDED. U.S. CONST. AMEND. XIV; N.J. CONST. ART. 1, ¶ 1.

POINT II

DEFENDANT SHOULD HAVE A NEW TRIAL ON THE FOURTH-DEGREE CHARGES BECAUSE A LARGE QUANTITY OF IRRELEVANT PRIOR BAD ACTS WERE ADMITTED THROUGH HIS DRIVER'S ABSTRACT. U.S. CONST. AMENDS. XIV; N.J. CONST. ART. 1, ¶ 1. ([N]ot raised below).

6

POINT III

DEFENDANT SHOULD HAVE A NEW TRIAL ON THE FOURTH-DEGREE CHARGES BECAUSE THE COURT IMPROPERLY INSTRUCTED THE DELIBERATING JURORS THAT THEY HAD TO BE UNANIMOUS IN REQUESTING A PLAY BACK. U.S. CONST. AMENDS. XIV; N.J. CONST. ART. 1, ¶ 1. ([N]ot raised below).

POINT IV

DEFENDANT'S ILLEGAL SENTENCE SHOULD BE CORRECTED BY MERGING THE LESSER TRAFFIC VIOLATIONS FOR DRIVING WHILE SUSPENDED AND DRIVING WITHOUT A LICENSE INTO THE GREATER FOURTH-DEGREE CONVICTIONS FOR DRIVING WHILE SUSPENDED. U.S. CONST. AMENDS. V, XIV; N.J. CONST. ART. 1, ¶¶ 1, 11. ([N]ot raised below).

II.

Because we are persuaded defendant is entitled to a new trial based on the judge's instruction that unanimity was required for a playback of testimony, we address that argument first.

In the absence of an objection to the judge's instruction, our review is limited to plain error. See R. 2:10-2 ("[T]he appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court."). "If the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182

(2012) (citing State v. Macon, 57 N.J. 325, 333-34 (1971)). "[P]lain error requires demonstration of legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." Id. at 182-83 (quoting State v. Chapland, 187 N.J. 275, 289 (2006)) (internal quotation marks omitted). "Furthermore, an 'alleged error is viewed in the totality of the entire charge, not in isolation,' and 'any finding of plain error depends on an evaluation of the overall strength of the State's case.'" State v. Cotto, 471 N.J. Super. 489, 545 (App. Div. 2022) (quoting State v. Nero, 195 N.J. 397, 407 (2008)).

In State v. Miller, Chief Justice Rabner, writing for a unanimous Court, addressed how trial judges should respond to a jury's request for testimony playback:

> Juries routinely ask to review trial testimony when they deliberate. Absent "some unusual circumstance," those requests should be granted. State v. Wolf, 44 N.J. 176, 185 (1965). The requests are a clear sign that the evidence sought is important to the deliberative process. They also reflect the reality that jurors cannot be expected to have perfect recall of every bit of evidence introduced during a trial. As a result, the "true administration of justice" requires that judges typically accede to jury requests to review testimony. Ibid.; see also State v. Wilkerson, 60 N.J. 452, 460 (1972). Judges should not decline a request

simply because it "would take time." Wolf, 44 N.J. at 186.

> [205 N.J. 109, 119-20 (2011) (citations reformatted).]

In Wolf, the "unusual circumstance[s]" for denying a jury's request for testimony readback were discussed in the context of a trial judge's instruction for a jury "to rely upon their recollection as to what the questioning of [a witness] had disclosed of the subject matter" in question.[1] 44 N.J. at 184. In reversing the defendant's conviction for murder and "under the somewhat bizarre [procedural] circumstances of the case," the Wolf Court held the trial court had unfairly exercised its discretion in "simply advising [jurors] to rely upon their recollection of the cross-examination of" a witness rather than grant the defense's request to reopen the case and allow additional testimony from a co-participant regarding the contents of letters that were the subject of the jury's note issued during deliberation. Id. at 184-85. The Court opined:

---

[1] The term "readback" was not used in Wolf. Instead, the Court referred to "reading of . . . testimony." Wolf, 44 N.J. at 185. The term "readback" was used in Miller to describe the practice of court reporters reading back testimony. State v. Miller, 205 N.J. 109, 122 (2011). With the universal use of recording technology, we use the term "playback." This transition was anticipated by the 1991 Supreme Court Committee on Court Reporting (Stenographic & Electronic), which recommended in its Final Report that courtrooms be equipped with videotape systems to create the record and that videotape recording be extended to additional courts as official court reporters voluntarily left state service. Miller, 205 N.J. at 120.

A-0045-24

It should be remembered that the reading of all or part of the testimony of one or more of the witnesses at a trial, criminal or civil, at the specific request of the jury during their deliberations is discretionary with the trial court. . . . When a jury retires to consider their verdict, their discussion may produce disagreement or doubt or failure of definite recollection as to what a particular witness said in the course of his testimony. If they request enlightenment on the subject through a reading of his testimony, in the absence of some unusual circumstance, the request should be granted. The true administration of justice calls for such action. Where there is a doubt in the minds of jurors as to what a witness said, it cannot be prejudicial to anyone to have that doubt removed by a rehearing of his testimony. There is no need to be chary for fear of giving undue prominence to the testimony of the witness. If under our system of trials a jury is to be considered intelligent enough to be entrusted with powers of decision, it must be assumed they have sense enough to ask to have their memories stimulated or refreshed only as to those portions of the testimony about which they are in doubt or disagreement. It must be assumed also that if they had any similar doubts or disagreements about statements of other witnesses they would seek the same remedy. . . . The matter must be left in the sensitive discretion of the trial judge. . . . But generally where the testimony is reasonably available, a judge should not refuse to grant a jury request to have it read merely because the reading would take time. In these days when the purpose of our procedure is full, fair and free exposure of all relevant evidence in a case both before and during the trial, there is no just reason for insisting that laymen jurors must have an unfailing and unanimous memory of all the testimony they hear in the courtroom.

[Id. at 185-86 (citations omitted).]

A-0045-24

As the parties note in their merits briefs, there is no New Jersey precedent directly addressing whether a jury's request for playback be unanimous, consensus-based, or the wish of a single juror. Thus, although we read the Court's holdings in Miller and Wolf to recognize a trial judge's discretion to inquire whether the scope of witness playback pertains to "one or more of the witnesses," it must concomitantly "be assumed [jurors] have sense enough to ask to have their memories stimulated or refreshed only as to those portions of the testimony about which they are in doubt or disagreement." Wolf, 44 N.J. at 185. Neither Miller nor Wolf suggests a trial judge has the discretion to impose unanimity as a condition to narrow the scope of playback. To endorse the exercise of such discretion would contravene the Court's recognition that "the purpose of our procedure is full, fair and free exposure of all relevant evidence in a case . . . [in which] there is no just reason for insisting that laymen jurors must have an unfailing and unanimous memory of all the testimony they hear in the courtroom." Id. at 186.

Based on the record, it is unclear what led the judge to impose unanimity as a condition for witness playback or why the judge did not simply play back the testimony. The trial was brief. From the record, which includes time stamps, Officer LaSassa's and Beke's entire testimony lasted a combined total of approximately seventy-nine minutes. Considering this limited time frame, it

11

was not unreasonable for the jury to seek playback of trial testimony in its entirety.

As noted, the jury submitted its request shortly before 3:58 p.m. The judge did not allocate time to first review the question with counsel. The record does not reveal whether the jury returned a verdict without responding to the judge's instruction because it believed unanimity was required or because it no longer needed the requested playback. However, the risk that a single juror was deprived of the opportunity to hear the testimony again undermines our confidence in the deliberative process and the verdict. Moreover, the trial judge's unanimity rule was unsupported by law. Thus, the error was not harmless as it had the clear capacity to produce an unjust result. See R. 2:10-2.

We reach this conclusion recognizing that the confidentiality of jury deliberations prevents us from knowing whether the verdict would have differed had the jury's request been granted. What we do know is that the jury returned its verdict forty-five minutes after being told its request for playback required unanimity, coincident with the end of the court day. The time and nature of these proceedings, permit the inference that concern for exigency may have played a role in the jury's verdict.

12

Although this was a brief trial, brevity is not a measure of a case's importance. The State's proofs, however facially sufficient, were properly subject to the jury's scrutiny, as in every case regardless of duration or gravity. These considerations reinforce our conclusion that the judge's instruction improperly impeded the jury's fundamental function, prejudicially affecting defendant's substantial rights and possessing the clear capacity to produce an unjust result. See R. 2:10-2.

We take this opportunity to outline the procedure trial judges should follow in responding to a jury question. On receiving a question, the judge should first convene counsel to the courtroom, read the question into the record, and state the proposed response outside the jury's presence. Before the jury is brought into the courtroom, counsel should be afforded an opportunity to present their respective positions on the record as to how the judge should respond to the jury's question. After considering counsel's positions, the judge should state the intended response. Consistent with Rule 1:7-2, counsel should then be afforded the opportunity to state whether they agree or object to the proposed response and any grounds for objection. Rule 1:7-2 provides:

> For the purpose of reserving questions for review or appeal relating to rulings or orders of the court or instructions to the jury, a party, at the time the ruling or order is made or sought, shall make known to the court specifically the action which the party desires

A-0045-24

the court to take or the party's objection to the action taken and the grounds therefor. . . .

This procedure ensures counsel has a meaningful opportunity to freely express their position without concern that disagreement with the court's proposed response must be voiced either in the presence of the jury or at a sidebar whose purpose is made evident when, as occurred here, in the jury's presence, the judge asks, "Counsel, anything for the record?"

We reaffirm the established principle that playback requests ordinarily should be granted. Although we do not decide here between whether a playback request must reflect the consensus of the jury or may be made at the request of a single juror, we see no reason to disagree with defendant's position that "[i]f even one deliberating juror want[s] clarification of the testimony, that juror should . . . [be] allowed to make a request of the judge," particularly given the unanimity required of jury guilty verdicts.

III.

**[At the direction of the court pursuant to <u>Rule</u> 1:36-3, the published version of this opinion omits Part III, which addresses defendant's Points I, II, and IV, arguing for judgment of acquittal, exclusion of evidence of prior bad acts, and questions of merger.]**

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Healy

Clerk of the Appellate Division

14